IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:08CR00047 JCH (TCM) ) |
| TIMOTHY MCCAULEY | ) ) |
| Defendant. | ) ) |

## **MOTION TO DISMISS INDICTMENT**

Comes now Defendant TIMOTHY MCCAULEY, through his attorney, Michelle L. Monahan, Assistant Federal Public Defender, and requests this Court enter an order dismissing all charges against the Defendant in this matter. In support thereof, Defendant submits the following:

### Statement of Facts

On September 14, 2007 Officer Mark Tulgetske of the Herculaneum Police Department obtained a State of Missouri search warrant to search Scenic View Skillled Care Center in response to a resident's allegation against Defendant McCauley for possession of child pornography. Mr. McCauley was also a resident of the care center having been declared an incapacitated person under Missouri civil law, Mr. McCauley has a legal guardian appointed in Butler County, Missouri.  On September 20, 2007 Officer Tulgetske conducted an audio recorded interrogation of Timothy McCauley in the

Butler County Jail while he was held under suspicion of unrelated charges, later dismissed.

On January 24, 2008, Timothy McCauley was charged by the above captioned one count Indictment with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b), to wit one video file. The Government failed to arrest Mr. McCauley until September 26, 2014, more than six and a half years later. Mr. McCauley never received notice of his Indictment and remained unaware of it until his arrest.

During this gap, McCauley lived conspicuously. He resided primarily in Missouri residential care facilities approved by his appointed guardian, Butler County Administrator Sharron Payne. In 2012, he moved into his stepmother's home in Imperial, Missouri. For income, McCauley received federal disability benefits from the Social Security Administration for his mental disabilities. Additionally, McCauley was subject to unrelated criminal proceedings. McCauley made all this information known to Sharron Payne in a timely fashion.

Payne filed numerous correspondences with Missouri 36th Judicial Circuit regarding her guardianship of McCauley. McCauley himself even submitted a correspondence on December 2, 2010. These correspondences noted the status of McCauley's guardianship and always included his present location.

McCauley remained unpursued despite contact with the criminal justice system. At the time of his federal indictment, McCauley was arrested on unrelated criminal charges

in Herculaneum, Missouri, said charges were dismissed on November 6, 2008.  In 2012, Jefferson County, Missouri police arrested McCauley on an unrelated domestic criminal matter. He was released on bond and fitted with a GPS monitoring system through Jefferson County Probation Office on November 21, 2012. McCauley could not go anywhere excluding his residence, employment, the Jefferson County Courthouse, his attorney's office, or any medical provider.

At this time, McCauley lived with his stepmother at 3104 Quiet Forest Drive in Imperial, Missouri. He worked part-time at two Dominos Pizza restaurants in University City, Missouri, and later in the City of St. Louis, Missouri. Sharron Payne remained informed of McCauley's residence and employment throughout this period.

On January 13, 2013, Mr. McCauley pled guilty in the State of Missouri Circuit Court of Jefferson County to one count of Domestic Assault in the Second Degree in violation of Mo. Rev. Stat. § 565.073, and one count of Unlawful Use of a Weapon in violation of Mo. Rev. Stat. § 571.030 regarding an argument with his girlfriend. Mr. McCauley received two five year sentences in the Missouri Department of Corrections, served concurrently, the executions of which were suspended for five and four years respectively.  Mr. McCauley remained on State supervised probation.

Mr. McCauley moved into Columbia Street Manor Residential Care Facility in 2013.  McCauley was arrested on April 23, 2013, regarding an argument with his roommate at the residential care facility in Jefferson County. On September 23, 2014, he

pled guilty to a misdemeanor, Domestic Assault in the Third Degree in violation of Mo. Rev. Stat. § 571.030.

Three days later, six years and eight months after his indictment, the Government finally arrested McCauley. Two local police officers entered Columbia Street Manor and approached McCauley. They arrested him after he identified himself. After necessary Court determinations of mental competency to stand trial, Mr.McCauley faces these charges, while being detained, more than seven years after the Indictment.

## Memorandum in Support of Dismissal

The Government's prosecution of McCauley represents a clear violation of his Sixth Amendment right to speedy trial. Courts weigh four factors in determining whether a violation of the right has occurred: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserts his right to speedy trial, and (4) whether the delay has prejudiced the defendant. *Doggett v. United States*, 505 U.S. 647, 652 (1992), *citing Barker v. Wingo*, 407 U.S. 514 (1972). All four factors need not favor the Defendant to necessitate dismissal. *See, e.g., United States v. Washington*, 504 F.2d 346, 348 (8th Cir. 1974).

1. An ongoing delay of more than seven years significantly exceeds the necessary time to presume prejudice and, therefore, strongly supports the Defendant's claim to dismissal.

This first factor involves a two-step inquiry. First, it must be determined whether the delay is "presumptively prejudicial." Upon such a showing, the court must consider

"the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination." *Doggett*, 505 U.S. at 651-52.

The first step can be dispensed with as the delay obviously exceeds the minimum for presumptive prejudice. Delays "approaching one year" indicate presumptive prejudice. *United States v. Jeanetta*, 533 F.3d 651, 656 (8th Cir. 2008). Likewise, the delay here decidedly surpasses the "bare minimum." *See Doggett*, 505 U.S. at 652. The Supreme Court has considered delays shorter than this one "extraordinary." *See Barker*, 407 U.S. at 533 (concerning a six year delay).

2. Blame for the delay rests entirely with the government in this case because Defendant lived so openly and conspicuously that the Government could have located and arrested him with minimal effort.

The Government's failure to use reasonable diligence to procure an arrest requires courts to conclude negligence on the part of the Government and weigh this second factor in favor of the Defendant. *Doggett*, 505 U.S. at 652-53. The Government bears the burden of justifying delayed arrest. *Barker*, 407 U.S. at 531 (finding "the ultimate" responsibility for such circumstances must rest with the government rather than with the defendant).

In *Doggett*, the Court concluded the Government had made insufficient efforts to arrest a defendant over a six year period as they could have ascertained his location within minutes. *Doggett*, 505 U.S. at 650, 652 (defendant was located by performing a simple credit check). When the Government fails to make a timely arrest despite multiple

opportunities to do so, courts must weigh this second factor in favor of the defendant. *United States v. Erenas-Luna*, 560 F.3d 772, 778 (8th Cir. 2009) (regarding a defendant who had exposed himself boarder control officials multiple times).

Just as in *Doggett*, the Government could have located Defendant McCauley in a matter of minutes. McCauley's guardian, Sharron Payne, has kept continued correspondence with him throughout the period of delay. With a single call to her office, the Government could have ascertained exactly where McCauley lived or worked. The State of Missouri has publicly documented Payne's guardianship of McCauley. Through its online docket service, "CaseNet," anyone with internet access can easily ascertain as much. *See* Mo. Case No. 36P02040039 *available at* www.courts.mo.gov/casenet/base/welcome.do.

The Government doubtlessly had other avenues to reach McCauley should it have chosen to pursue them. Just as the defendant in *Erenas-Luna* had exposed himself to government authorities, McCauley faced multiple criminal inquiries, reported to mandatory court proceedings, occupied jails, and even wore a GPS monitor indicating his exact location. The Government even sent McCauley Federal Social Security benefits by way of Sharron Payne. That the Government could not locate him given its enormous supply of investigative resources indicates a complete lack of diligence in their pursuit.

The Government could have located and arrested McCauley any moment since filing the Indictment against him. The failure to do so clearly illustrates a lack of reasonable diligence so blame for the delay rests with the Government and the second factor weighs in favor of the Defendant. *Doggett*, 505 U.S. at 652-53.

3. Because McCauley remained unaware of the instant proceedings until his 2014 arrest, he could not have asserted his rights rendering this factor inapposite.

Evaluation of this third factor depends on circumstance. The Court has explicitly noted the differences between defendants who fail to assert their rights for surreptitious reasons rather than ignorance. *Barker*, 407 U.S. at 528-29. A defendant who does not know of the charges brought against him should not be penalized for failing to invoke his rights. *Doggett*, 505 U.S. at 653.

Defendant McCauley had no knowledge of his Indictment and limited knowledge of the investigation. His only source of knowledge regarding the possibility of a charge came on the day he was questioned by Officer Tulgetske seven years prior to his arrest. McCauley heard nothing more regarding the incident and, therefore, reasonably believed the matter settled. His lack of knowledge obviates his responsibility to assert his speedy trial rights and leaves the third factor null.

4. The six year, eight month delay between indictment arrest creates a presumption of prejudice as when the delay is attributable to the Government and the Defendant has not acquiesced to the delay.

Extreme delays caused by the Government create a presumption of prejudice which defendants may rely on in lieu of presenting specific instances of prejudice. *Doggett*, 505 U.S. at 655. *United States v. Erenas-Luna*, 560 F.3d 772, 779 (8th Cir. 2009) ("Where the government has been negligent, however, prejudice can be presumed if there has been an excessive delay").

As noted above, the delay here qualifies as extraordinary and attributable to the Government's lack of diligence. The Court explicitly states these facts combined with six year delay demand dismissal. *Doggett*, 505 U.S. at 658 ("delay six times as long as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief"). Even absent the presumption, the time passed has precluded McCauley from preparing his defense. He could not follow up with potential witnesses and did not have the opportunity to review his computer usage to articulate a reason for the appearance of lewd images.

Weighing these four factors together warrants dismissal of the Indictment. The length of the delay strongly supports dismissal as it extends many years past the threshold to presume prejudice. The Government failed to exercise reasonable diligence to arrest McCauley. McCauley did not know of the impending charges so he could not assert his

rights to a trial. Finally, the length and circumstances surrounding the delay create a presumption of prejudice. All factors support the Defendant's claim for dismissal.

WHEREFORE, Defendant prays this Court grant his motion to dismiss all charges against him.

Respectfully submitted,

/s/  Michelle L. Monahan
MICHELLE L. MONAHAN
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Michelle_Monahan@fd.org
ATTORNEY FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Carrie Costantin, Assistant United States Attorney.

/s/Michelle M. Monahan
MICHELLE M. MONAHAN
Assistant Federal Public Defender